UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dwight Xavier Jones, # 237527, ) | C/A No. 5:12-3554-RBH-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Report and Recommendation |
| ) | |
| South Carolina Department of Corrections; ) | |
| Cayce Public Safety; ) | |
| Lexington County Sheriff Dept.; ) | |
| Mr. William R. Byars, Jr., *SCDC Director*; ) | |
| Robert E. Ward, *SCDC Deputy Director*; ) | |
| Mrs. Monica Wallace, *SCDC State Classification*; ) | |
| Officer Dan Crews, *Cayce Public Safety*; ) | |
| Officer M. Moses, *Lexington County Sheriffs Department*; ) | |
| Mrs. Candi Cannon, *SCDC State Classification Inmate Records*; ) | |
| Mr. John McCall, *Lower Savannah Pre-Release Work Release*; ) | |
| Mr. Steve Birone, *Classification, Lower Savannah Pre-Release Work Release*; ) | |
| Mr. Stewart Golden, *Lower Savannah Pre-Release Work Release*, ) | |
| Defendants. ) | |

## *Background of this Case*

Plaintiff is an inmate at the Trenton Correctional Institution. Plaintiff is serving a five-year sentence for assault of a high and aggravated nature (AHAN). The South Carolina Department of Corrections ("SCDC") website (https://www.sword.doc.state.sc.us/scdc-public/, last visited on Dec. 27, 2012) indicates that Plaintiff's parole eligibility date is February 28, 2013, and his projected release date is March 24, 2013.

1

Plaintiff brought this suit against SCDC, the Lexington County Sheriff's Department, the City of Cayce Public Safety Department, and various officials and employees of those three entities. Plaintiff alleges that his placement in a pre-release center was rescinded because of erroneous information in his inmate record. ECF No. 1 at 3. Plaintiff describes this allegedly erroneous information as an unresolved charge of incest. According to Plaintiff, that charge was resolved with a charge of providing alcohol to a minor. *Id.* No express request for relief appears in the Relief portion of the Complaint, other than Plaintiff's indication that he is seeking to expose the corruption and racism of Defendants. *See id.* at 3-5.

Plaintiff has also included lengthy attachments to his Complaint. In his first attachment, ECF No. 1-1, Plaintiff refers to his gunshot wound, reiterates his allegations of racism and corruption, and complains about the grooming policy of the South Carolina Department of Corrections, and his medical care. Plaintiff's medical care relating to the gunshot wound is the subject of a pending case, *Dwight Jones v. Correct Care Solutions*, Civil Action No. 0:11-2890-RBH-PJG. On the final page of his first attachment and on the first page of his second attachment, Plaintiff seeks to "[a]mend all cases into one case[.]" ECF No. 1-2 at 1. On the second page of his second attachment, Plaintiff seeks injunctive relief. *Id.* at 2.

Plaintiff's final two attachments are exhibits relating to Plaintiff's charge of transferring alcohol to a minor, other criminal charges against Plaintiff, and Plaintiff's incarceration. The alcohol charge (#90781DR) was nol prossed on January 7, 2007, ECF No. 1-4 at 3; the charge (#90781DR) appears as a detainer for incest on Plaintiff's SCDC record, *id.* at 4. A letter to Plaintiff from the City of Cayce Municipal Court dated February 10, 2012, indicates that #90781DR was

expunged but that it appears on a State Law Enforcement Division ("SLED") report "due to SLED being behind." *Id.* at 5.

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review[1] has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25, 31–35 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989); *Haines v. Kerner*, 404 U.S. 519, 519 (1972) (per curiam); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 953–56 (4th Cir. 1995) (en banc); *Todd v. Baskerville*, 712 F.2d 70, 71–74 (4th Cir. 1983); *Loe v. Armistead*, 582 F.2d 1291, 1295-96 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Plaintiff is a pro se litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007) (per curiam); *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); and *Cruz v. Beto*, 405 U.S. 319, 321-23 (1972) (per curiam). When a federal court is evaluating a pro se complaint or petition, a plaintiff's or petitioner's allegations are assumed to be true. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008). Nonetheless, a litigant must plead factual content that allows the court to draw the reasonable inference that the defendant or respondent is plausibly liable, not merely possibly liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even when considered under this less stringent standard, the Complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege

---

[1] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district court.

facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

Plaintiff is not entitled to a transfer from the Trenton Correctional Institution to a prison or pre-release center of his choice. South Carolina law confers no protected liberty interest upon inmates of SCDC from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See*, *e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992) (*citing Meachum v. Fano*, 427 U.S. 215 (1976)); *see also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978). In fact, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid of means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D. Md. 1991); *see also McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");[2] *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"); and *Isgrigg v. CDC*, No. C 06-07618 JW (PR), 2008 WL 754892, at *2 (N.D. Cal. March 20, 2008) ("A prisoner's liberty interests are sufficiently extinguished by his conviction that

---

[2]Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law. This portion of the holding in *Hewitt v. Helms* has not been superannuated by later case law.

the state may generally confine or transfer him, or not transfer him in the case of plaintiff, to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution").

Plaintiff's claims of defamation are not actionable in this civil rights action. An alleged act of defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693, 697-710 (1976). Secondly, under longstanding South Carolina case law, contents of governmental records—such as judicial proceedings, case reports, published cases, investigative reports, or arrest records—do not give rise to liability for slander or libel. *See Padgett v. Sun News*, 292 S.E.2d 30, 32-33 (S.C. 1982); and *Heyward v. Cuthbert*, 15 S.C.L. (4 McCord) 354, 356–59 (1827). Furthermore, civil rights statutes such as 42 U.S.C. § 1983 do not impose liability for violations of duties of care arising under a state's tort law. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199-203 (1989).

SCDC is immune from suit under the Eleventh Amendment, which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department. *See, e.g., Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000); *Alden v. Maine*, 527 U.S. 706 (1999); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens); *Virginia v. Reinhard*, 568 F.3d 110 (4th Cir. 2009); *Belcher v. S.C. Bd. of Corr.*, 460 F. Supp. 805, 808-09 (D.S.C. 1978); and *Simmons v. S.C. State Highway Dep't*, 195 F. Supp. 516, 517 (E.D.S.C. 1961).

5

The Lexington County Sheriff's Department is also immune from suit. Sheriff's departments in South Carolina are state agencies, not municipal departments. *See* S.C. Code Ann. § 23-13-550 (2008); 1975 S.C.Att'y.Gen'l.Op. No. 47 (Jan. 22, 1975); and S.C. Code Ann. § 23-13-10 (Westlaw 2012), which provides that only the Sheriff has the authority to hire or terminate employees of the Sheriff's Department, and that the Sheriff is responsible for neglect of duty or misconduct by a deputy sheriff. *See also Edwards v. Lexington Cnty. Sheriff's Dep't*, 688 S.E.2d 125, 127 n.1 (S.C. 2010) ("However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."); *Allen v. Fid. and Deposit Co.*, 515 F. Supp. 1185, 1189-91 (D.S.C. 1981) (county cannot be held liable for actions of deputy sheriff because deputy sheriffs serve at pleasure of the Sheriff, not the County), *aff'd*, 694 F.2d 716 (4th Cir. 1982) [Table]; and *Comer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (suit against Sheriff of Greenville County: ". . . Sheriff Brown is an arm of the State."). Indeed, any damages to Plaintiff, if awarded in this case, would be paid by the South Carolina State Insurance Reserve Fund. *Comer v. Brown*, 88 F.3d at 1332 ("Judgments against the Greenville County Sheriff are paid by the South Carolina State Insurance Reserve Fund.").

Throughout the Statement of Claim portion of the Complaint, Plaintiff refers to corruption and racism of state and local officials and employees. Although it is not entirely clear, it appears that Plaintiff may be seeking a state or federal criminal investigation of Defendants. Plaintiff cannot obtain a criminal investigation or criminal charges against Defendants. *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a private citizen does not have a judicially cognizable interest in the prosecution or non-prosecution of another person); *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (*applying Linda R. S. v. Richard D.* and collecting cases); *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981), which arose in South Carolina; and *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990).

In *Leeke*, inmates who were allegedly beaten by prison guards sought criminal arrest warrants against the guards. The inmates presented sworn statements to a state magistrate, but the state magistrate, upon a Solicitor's request, declined to issue the warrants. In *Leeke*, the Supreme Court of the United States reiterated its earlier holding in *Linda R.S. v. Richard D.*, and again ruled that a private citizen lacks a judicially cognizable interest in the criminal prosecution of other persons. *Leeke*, 454 U.S. at 86-87. Moreover, in its opinion in *Leeke*, the Court cited a similar precedent from the Supreme Court of South Carolina. *See Leeke*, 454 U.S. at 87 n.2, *citing State v. Addison*, 2 S.C. 356, 364 (1871).

Insofar as Plaintiff is seeking a temporary restraining order to grant him a transfer from his current prison to a pre-release center, Plaintiff clearly cannot satisfy the "attorney certification" requirement for a temporary restraining order required under Rule 65(b)(1)(B) because Plaintiff is not an attorney admitted to practice before this court. Also, under Rule 65(a), a district court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). In any event, Plaintiff is not entitled to a preliminary injunction. In order to obtain injunctive relief, a plaintiff must establish: (1) the likelihood that the plaintiff will succeed on the merits; (2) the likelihood of irreparable harm to the plaintiff if the injunction is not granted; (3) that the balance of equities tips in his or her favor; and (4) the injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 19-20 (2008); *Real Truth About Obama v. FEC*, 575 F.3d 342, 346 (4th Cir.2009), vacated on other grounds, 130 S.Ct. 2371 (2010). All four requirements must be satisfied. *See Real Truth About Obama*, 575 F.3d at 346.

Furthermore, to obtain injunctive relief, a plaintiff must demonstrate more than the "possibility" of irreparable harm because the "possibility of irreparable harm" standard is

inconsistent with the Supreme Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that a plaintiff is entitled to such relief. *Real Truth About Obama, Inc.*, 575 F.3d at 346, citing *Winter*, 555 U.S. at 19-22.  As Plaintiff has been committed to SCDC to serve his five-year sentence, SCDC officials discretion to place Plaintiff in any one of its institutions because federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control.  *See Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974).

Although Plaintiff contends that he was removed from the work program at the Lower Savannah Pre-Release Center because of the erroneous "incest" detainer, a letter dated July 2, 2012, to Plaintiff from SCDC Deputy Director Robert Ward indicates that Plaintiff was removed from the work program at the Lower Savannah Pre-Release Center for a disciplinary infraction, *i.e.*, striking another inmate with or without a weapon. ECF No. 1-4 at 9. Additional exhibits indicate that Plaintiff was convicted of this major infraction, lost thirty days of good time, and, as a result, did not earn any good time for a month.  As a result, Plaintiff's actual release date, if he does not incur any further disciplinary infractions, will be March 1, 2013. ECF No. 1-4 at 14.[3]

Plaintiff's exhibits indicate that, earlier, he had been transferred to the Lower Savannah Pre-Release Center from the Campbell Pre-Release Center for his own safety. ECF No. 1-4 at 18.

---

[3]The projected release date on the SCDC website and the actual release date differ because SCDC sometimes releases inmates whose sentences expire during a month on the first day of that particular month.  *See Bennett v. Byers*, C.A. No. 2:12-742-TMC-JDA, 2012 WL 1416511, at *1 (D.S.C. March 30, 2012) ("Plaintiff contends that he should have been released on February 1, 2012, based on a well-known practice of [SCDC] to release prisoners on the first day of the month of their scheduled release.  According to Plaintiff, his correct scheduled release date was February 9, 2012, and, hence, Plaintiff should have been released on February 1, 2012."), *adopted by* 2012 WL1416484 (D.S.C. April 24, 2012).

Another exhibit indicates that this safety reason was a "separation concern." *Id.* at 26. Further, Plaintiff's exhibits indicate that he tends to get into fights or incidents, even though the exhibits indicate Plaintiff was not the "aggressor" in some of those incidents. ECF No. 1-4 at 32-35, ECF No. 1-5 at 1, 15. In light of Plaintiff's history of getting into altercations outside of prison and in light of the incident involving the striking of another inmate at the Lower Savannah Pre-Release Center, SCDC officials had the discretion to move Plaintiff to a different institution. *See Wolff v. McDonnell*, 418 U.S. at 558-62.

The Trenton Correctional Institution is a medium-security (L 2) institution (http://www.doc.sc.gov/institutions/trenton.jsp, last visited on Dec. 27, 2012). The Lower Savannah Pre-Release Center is a minimum-security (L 1-A) institution (http://www.doc.sc.gov/institutions/lowersav.jsp, last visited on Dec. 27, 2012). Plaintiff's placement at the Trenton Correctional Institution, though unpleasant to Plaintiff, does not violate his federal constitutional rights. *See Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981) (noting that the Eighth Amendment does not require that prisoners "be housed in a manner most pleasing to them, or considered even by most knowledgeable penal authorities to be likely to avoid confrontations, psychological depression, and the like."); *cf. Sandin v. Conner*, 515 U.S. 472, 481 (1995) (due process clause offended only when inmate subjected to atypical and significant hardships in relation to ordinary incidents of prison life).[4]

---

[4] It can be judicially noticed that the Trenton Correctional Institution is less than twenty miles from the Lower Savannah Pre-Release Center. Also, both the Trenton Correctional Institution (in Edgefield County) and the Lower Savannah Pre-Release Center (in Aiken County) are in counties adjacent to one another.

## *Recommendation*

Accordingly, it is recommended that the district court dismiss the above-captioned case *without prejudice* and without service of process. It is also recommended that Plaintiff's request to consolidate his pending cases be denied. Plaintiff's attention is directed to the Notice on the next page.

IT IS SO RECOMMENDED.

December 28, 2012                                          Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Larry W. Propes, Clerk of Court**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

11